```
 1                 UNITED STATES DISTRICT COURT FOR
                     THE DISTRICT OF MARYLAND
 2

 3  -------------------------x
    UNITED STATES OF AMERICA,  :
 4              Plaintiff      :
                              :
 5                            :
    vs                        :Criminal Action: AW-09-632
 6                            :
    SHAMAI KEDEM LEIBOWITZ,    :
 7              Defendant.     :
    -------------------------x

 8

 9                            Thursday, December 17, 2009
                              Greenbelt, Maryland
10

11
            The above-entitled action came on for an
12  Arraignment and Rule 11 Proceeding before the HONORABLE
    ALEXANDER WILLIAMS, Jr., United States District Judge, in
13  courtroom 4A, commencing at 11:14 a.m.

14

15
            APPEARANCES:
16
            On behalf of the Plaintiff:
17
            STEVEN M. DUNNE, Esquire
18          KATIE KEDIAN, Esquire

19

20          On behalf of the Defendant:

21          CARY M. FELDMAN, Esquire

22

23

24
    Tracy Rae Dunlap, RPR, CRR              (301) 344-3912
25  Official Court Reporter
```

1                          I N D E X

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
                                              <u>Page</u>

24 Reporter's Certificate                       28

25

1          THE COURT:  All right.  Mr. Dunne.

2          MR. DUNNE:  Thank you, Your Honor.  Calling the

3 case of United States of America versus Shamai Kedem

4 Leibowitz.  This is criminal AW-09-0632.  We are here for

5 an initial appearance on the information and arraignment,

6 and a Rule 11 proceeding.

7          I'm Steve Dunne and, together with Katie Kedian

8 from the Department of Justice, we represent the United

9 States.  Also with me today are special agents Darrell

10 Hunter and Chris Lenhart from the FBI.  Thank you, Your

11 Honor.

12          THE COURT:  All right.

13          MR. FELDMAN:  Your Honor, Cary Feldman on behalf

14 of Mr. Leibowitz.  Mr. Leibowitz is in court.  In

15 addition, both his mother, who came from Israel, she has

16 got dual citizenship and has been here the last week, and

17 his wife are here in court with us as well.

18          THE COURT:  All right.  We'll put your client

19 under oath right now.  Madam Clerk, if you can go ahead

20 and administer the oath.

21          THE CLERK:  Please raise your right hand.

22               (Witness sworn at 11:15 a.m.)

23          THE CLERK:  Please state your full name for the

24 record.

25          THE WITNESS:  Shamai, S-H-A-M-A-I, Kedem

1 Leibowitz.

2         THE CLERK:  What is your age?

3         THE WITNESS:  Thirty-nine.

4         THE COURT:  What was that?

5         THE WITNESS:  Thirty-nine.

6         THE COURT:  All right.

7         THE CLERK:  What year were you born?

8         THE WITNESS:  1970.

9         THE CLERK:  Have you been furnished with a copy of

10 the information?

11         THE WITNESS:  Yes.

12         THE CLERK:  Have you read the information?

13         THE WITNESS:  Yes.

14         THE CLERK:  Do you understand the charge placed

15 against you?

16         THE WITNESS:  Yes.

17         THE CLERK:  Mr. Feldman, as counsel for the

18 defendant, are you satisfied that the defendant

19 understands what he is charged with?

20         MR. FELDMAN:  Yes, I am.

21         THE CLERK:  Mr. Leibowitz, you have been charged

22 in Count One of the information.  How do you wish to

23 plea?

24         THE WITNESS:  As indicated in the plea agreement,

25 pursuant to the plea agreement, I plead guilty.

1        THE CLERK:   The plea is guilty as to count one of

2   the information; is that correct?

3        THE WITNESS:   That's correct.

4        THE CLERK:   Thank you.

5                            **EXAMINATION**

6        BY THE COURT:

7   Q.   All right.   You may be seated.   Mr. Leibowitz, I'm

8   Judge Williams of this court.   And before I can accept a

9   guilty plea, I have to go through a series of questions

10  with you to make sure that your decision to plead guilty

11  is a knowing and voluntary one and is made after you

12  waived your constitutional rights.

13        You are under oath now, and your responses are

14  being recorded by the reporter.   To the extent you don't

15  understand what I'm asking, you may stop me at any time

16  and consult with your counsel, Mr. Feldman, and then

17  respond back to me.   The first thing I want to go over is

18  this waiver of indictment.

19        As you probably know and have been told, you've

20  got an absolute right to have these allegations presented

21  to a grand jury, which consists of 23 persons, who decide

22  whether there is probable cause to hand down an

23  indictment.   Instead of that process, you have elected to

24  proceed by way of a criminal information.

25        An information is a document -- a charge prepared

1 by the prosecutors in this case instead of a grand jury

2 indictment.  Do you understand the difference?

3 A.     Yes, I do.

4 Q.     And do you wish to proceed under the information

5 and waive your indictment?  Is that correct?

6 A.     That's correct, Your Honor.

7 Q.     All right.  You have executed the form, and I am

8 now signing and approving the waiver.  You indicate

9 you're 39 years old.  What is your educational

10 background?

11       MR. FELDMAN:  Your Honor, would it be okay for him

12 to sit?  Or, do you want him to rise?

13       BY THE COURT:

14 Q.     No.  He can sit; he can stand.  Just bring the mic

15 closer so we can hear.

16       What is your educational background?

17 A.     I have a law degree from Bernhardt University and

18 a masters degree from the Washington College of Law.

19 Q.     All right.  So you, then, read and write and

20 understand English?

21 A.     Yes, I can.

22 Q.     In the last 24 hours, have you taken any drugs,

23 alcohol, or medicine?

24 A.     No.  I only take medication for -- I have a

25 stomach ailment, Gastroesophageal Reflux Disease, so I

1 take Protonix medication for that.

2 Q.      All right.  Is there anything about that

3 medication that prevents you from understanding me now?

4 A.      No, Your Honor.

5 Q.      Have you ever been hospitalized for any mental

6 illness, or addiction to drugs?

7 A.      No.

8 Q.      How would you describe your physical and mental

9 condition right now and as we speak?

10 A.      Fine.

11 Q.      All right.  I'm looking at the original plea

12 agreement entered into between you and the government;

13 it's dated November 30, 2009.  As I look at Pages 8, as

14 well as the Attachment A to that, there appear to be

15 signatures of a Cary M.- -- excuse me, that's your

16 attorney.  The name of Shamai Leibowitz.  Are those your

17 signatures?

18 A.      Yes.

19 Q.      Have you read through the plea agreement?

20 A.      Yes.

21 Q.      Do you understand everything in it?

22 A.      Yes.

23 Q.      All right.  Let me go through the essential

24 features of this so that I know in my mind that you

25 understand it.  Now, you have offered a guilty plea to

1 the one-count criminal information which charges you with

2 Disclosure of Classified Information, which is a

3 violation of federal law.

4        If you went to trial and pled "not guilty," here

5 is what the government would have to prove beyond a

6 reasonable doubt.  First, that you communicated,

7 furnished, transmitted, or otherwise made available to an

8 unauthorized person classified information.  Second, that

9 the classified information that you disclosed concerned

10 the communication intelligence activities of the United

11 States.  And then three, that you disclosed the

12 classified information to an unauthorized person

13 knowingly and willfully.

14        Do you understand these three elements, Mr.

15 Leibowitz, that the government would have to prove if you

16 went to trial?

17 A.     Yes, Judge, I understand that.

18 Q.     All right.  Let's talk about the penalties.  Of

19 course, this is a plea under what we call 15(c) of the

20 criminal federal rules, and therefore there is an agreed

21 upon sentence and disposition which the court will agree

22 to after having talked to both sides.  But, under the

23 law, the maximum sentence by statute which you are

24 pleading guilty to is as follows.  You could be, under

25 that statute, in prison for up to ten years, followed by

1 three years of supervised release, and a fine up to

2 $250,000.

3          There is also a $100 special assessment fee that's

4 due and payable at or near sentencing.

5          If there is any restitution that is appropriate,

6 that also is to be issued.  And if any fine or

7 restitution is imposed, they both are payable

8 immediately, unless I work out installment plans for you.

9          Supervised release works like this, Mr. Leibowitz.

10 If I place you on supervised release following any

11 incarceration, with conditions, and if you violate any of

12 those conditions of supervised release, you would then

13 possibly have to go to a hearing on a violation.  And if

14 you are found in violation, you could be sentenced to a

15 term different than that which you initially serve.  Do

16 you understand how supervised release works?

17 A.      Yes, Judge.

18 Q.      Do you understand the maximum statutory penalty

19 that that statute provides, although there is a 15(c)

20 agreement here which I'm going to approve?  Do you

21 understand that?

22 A.      Yes, Your Honor.

23 Q.      All right.  Let's look at the advisory sentencing

24 guidelines in this case.  Again, there's a base offense

25 level for this offense, which is 24, but there's a two

1  level enhancement because you abused a position of trust

2  in a manner that significantly facilitated the initiation

3  and concealment of the offense that would take it to 26.

4  However, there's a total of a three level adjustment

5  because you are accepting responsibility and you're doing

6  it in a fairly quickly manner, and so the government

7  would have no problem with an adjusted offense level

8  under the guidelines to 23.

9       Of course, that is conditioned -- that is the

10 government's consent, and no opposition to that is

11 conditioned on these things set forth in 6(b) not taking

12 place.  And as you can see there, you have to admit your

13 involvement here and your responsibility, and you can't

14 commit any other crimes or obstruct justice, and you

15 can't attempt to withdraw your guilty plea, and you've

16 got to be candid when you're talking to probation and not

17 otherwise obstruct justice.  As long as those things are

18 not offended under that section, the government will not

19 have any problem with the adjusted offense level of a 23.

20      I will order a presentence report.  And depending

21 on, of course, what your background is, that would

22 determine where you would fall under the advisory

23 guidelines.  Other than that, there appear to be no other

24 sentencing factors or potential departures or no other

25 adjustment that will be made between you and the

1 government.  Do you agree with that?

2 A.      Yes, Your Honor.

3 Q.      All right.  Page 5 of the plea agreement,

4 Paragraph 9.  Again, I'll read that; but the court has

5 already indicated to you I'm going to accept that.  It

6 says here, the parties stipulate and agree under

7 11(c)(1)(C) -- I called it 15(c), it's an 11(c) plea --

8 that a sentence of 20 months imprisonment -- 20 months of

9 imprisonment is the appropriate disposition of this case.

10 And, of course, while it does not affect my discretion to

11 impose any lawful sentence, I have already talked with

12 both sides, and I do agree that I'm going to impose the

13 agreed upon sentence of 20 months in this case.  And if I

14 don't, you have the right to seek to withdraw your guilty

15 plea under Rule 11(c)(5).  Is that clear to you, Mr.

16 Leibowitz?

17 A.      Yes, Your Honor.

18 Q.      All right.  At sentencing, either side can bring

19 to my attention any information about your background and

20 experience, character and conduct.

21         There is also a waiver of appeal here as long as

22 the court, that's me, imposes a sentence that I've agreed

23 to do under 11(c), then you won't have any rights to

24 appeal, and the government won't have any rights to

25 appeal; and that includes fines and any orders of

1 restitution or forfeiture or anything else.

2        Again, if I give a sentence higher than 20 months,
3 you certainly can get out of the plea and you certainly
4 can appeal.  But absent that, you won't have any rights
5 to appeal.  Do you understand, Mr. Leibowitz?

6 A.      Yes.  Yes, I do.

7 Q.      All right.  Nothing in this agreement should be
8 construed to prevent you from invoking Rule 35 or from
9 appealing any decision, again, in case there is some
10 technical or other error.

11        You also waive any and all rights under the
12 Freedom of Information Act relating to the investigation
13 and prosecution of this case, and you agree not to file
14 any requests for documents from this office or any
15 government agency.  Is that understood to you?

16 A.      Yes, Your Honor.

17 Q.      All right.  Under Paragraph 12, you have agreed to
18 not commit any other offenses in violation of the law
19 between the date of your agreement and the sentencing
20 date.  And of course, if you engage in any obstruction of
21 justice or any other criminal conduct, there's a penalty
22 that you pay and is set forth here in Paragraph 12.

23        If you engage in any conduct after the date of
24 this agreement which justifies obstruction of justice, or
25 you fail to accept personal responsibility for your

1 conduct by not acknowledging your guilt to the probation

2 officer, or if you commit any other violations federal,

3 state, or local, the government will be relieved of any

4 obligations and promises that they made to you under this

5 agreement.  In other words, the government then would be

6 free to argue at sentencing, guideline factors other than

7 what they've agreed to do.  And they can make other

8 sentencing recommendations that's not set forth in this

9 agreement.

10       So, if there is any willful breach, again, the

11 government will have to prove that, and I'll take a look

12 at that to see whether, by preponderance of the evidence,

13 you in fact have obstructed justice or breached your

14 agreement.  If I find that you've obstructed justice,

15 again, in consideration with the plea agreement, you

16 won't have a right to withdraw your guilty plea for that

17 reason alone.  Do you understand?

18 A.       Yes, Your Honor.

19 Q.       All right.  Continuing obligation regarding

20 nondisclosure of U. S. government information, that's

21 Paragraph 13.  That's pretty clear.

22       It says here that in connection with your

23 employment by the FBI, you entered into certain

24 agreements prescribing unauthorized disclosures of

25 classified information or other sensitive and other

1 information.  And these agreements without limitation,

2 again, are set forth there.  They have been signed by you

3 as of January 15, 2009.  And this nondisclosure

4 agreement, again, is binding on you.  And even though

5 you're no longer an FBI employee, you acknowledge your

6 continuing duties and obligations under these agreements.

7 Do you understand these things, Mr. Leibowitz?

8 A.      Yes, Your Honor.

9 Q.      You agree to abide by that?

10 A.      Yes.

11 Q.      Well, I see in Paragraph 14 that you will never

12 disclose to any person or entity, except authorized by

13 the United States, any classified information or

14 sensitive or confidential government information, or any

15 other information acquired as part of your official

16 duties to your -- through the employment of the FBI.

17 That's what it says.  Did you read that?

18 A.      Yes.

19 Q.      Do you understand it?

20 A.      Yes.

21 Q.      Do you agree to do it?

22 A.      Yes, I do.

23 Q.      Paragraph 15 says the court is not a party to the

24 agreement, and that is true:  I'm not a party to this.

25 Normally I would have the right to make determinations

1 and sentencing decisions and make findings under the

2 advisory guidelines that differ from that which you and

3 the government have agreed upon, and I can do that.  And

4 if I do do it and it does not violate the spirit of

5 11(c), you won't have a right to withdraw your guilty

6 plea because, again, nobody can make a binding prediction

7 on what the sentence will be.  Do you understand that?

8 A.     Yes.

9 Q.     Mr. Leibowitz, are there any other promises or any

10 other understandings or conditions between you and the

11 government that's not in here that I need to know about?

12         MR. DUNNE:  Your Honor, did you want to address

13 the sealed supplement at the bench?

14         THE COURT:  All right.  We can do that now if you

15 like.  Approach the bench.  Does he have an ear plug?  If

16 not, he can come up.  He either can come up, or he can

17 put the ear plug in.

18             (Discussion held at the bar of the court

19               and placed under seal by court order.)

20                     (Back in open court.)

21         BY THE COURT:

22 Q.     All right.  Mr. Leibowitz, other than what we've

23 now talked about here on the record, as well as what's in

24 the plea agreement, are there any other promises or

25 understandings or representations by anyone to get you to

1 plead guilty that I need to know about?

2 A.      No, Your Honor.

3 Q.      All right.  Are you -- did anyone threaten you to

4 get you to plead guilty?

5 A.      No.

6 Q.      Are you pleading guilty because you do believe

7 that in truth and in fact that you violated the law

8 through these unauthorized disclosures?

9 A.      Yes.

10 Q.      Are you satisfied with the legal services that Mr.

11 Feldman has provided to you up to this point?

12 A.      Yes.

13 Q.      Has he gone over with you the elements of the

14 offense, and has he shared what information he's learned

15 that the government has by way of discovery?

16 A.      Yes, Your Honor.

17 Q.      Do you have any complaints about what Mr. Feldman

18 has done or not done?

19 A.      No.

20 Q.      All right.  Let's go to another area.  This is a

21 felony that you are pleading guilty to.  And when people

22 are found guilty of felonies in this country, there are

23 certain implications that come from that.  Let me explain

24 a few.  Some states deny you the right to sit as jurors,

25 or even vote.  Certain professional licenses could be

1  denied you.  Certain federal and state benefits could be

2  denied you.  If you're not a citizen, you could be

3  deported from this country.  If you're on probation or

4  parole with some other system, that could be affected by

5  being found guilty of another felony.  And, of course,

6  felons can't possess firearms ever.  Do you understand

7  that, sir?

8  A.     Yes.

9  Q.     And knowing that, you still wish to plead guilty?

10  A.     Yes.

11  Q.     And then finally, I want to go over with you the

12  constitutional rights that you have as someone accused of

13  a crime.  I know you've already read about those things

14  in your plea agreement, but let me put them in my own

15  words.  You don't have to plead guilty.  You have an

16  absolute right to plead "not guilty."  And if you plead

17  not guilty, you don't have to prove your innocence but,

18  rather, the government has the absolute right and duty to

19  prove you guilty beyond a reasonable doubt.

20         You also have a right to a court trial or a jury

21  trial.  A court trial is if both sides agree, but you

22  also have a right to plead not guilty and have a jury

23  trial.  And if you elect a jury trial, you can't be found

24  guilty unless all 12 of the jurors who are seated

25  unanimously agree that the government has proven you

1 guilty beyond a reasonable doubt.

2       You also have the right to what we call the
3 effective assistance of counsel.  What that means is that
4 Mr. Feldman would be representing you to the best of his
5 professional ability throughout all of the proceedings
6 associated with this case.

7       You also have the right to see the witnesses, to
8 hear them, to confront them and to cross-examine them
9 with appropriate questions.  You also have the right to
10 present witnesses on your behalf.  If you went to trial
11 and if those witnesses do not come voluntarily, or if
12 there are certain records or documents that you want
13 brought in, you can ask me to issue a Rule 17 and we can
14 bring them in to assist you in your defense.

15      Also, Mr. Leibowitz, you can take the stand as a
16 witness yourself.  You can take the stand and testify
17 during your trial and then permit the government to
18 cross-examine you with appropriate questions about your
19 testimony.  But in this system of jurisprudence over
20 here, you don't have to take the stand.  You may take
21 what we call "the Fifth" and decide that you don't want
22 to take the stand.  And if you elect not to take the
23 stand, there can be no inferences of guilt drawn against
24 you, and I will instruct the jury to that effect.

25      Finally, Mr. Leibowitz, if you go to trial and

1 you're found guilty by either a court trial or by a jury,

2 you would have, normally and absolutely, the right to

3 appeal automatically.  You may appeal any of my rulings

4 and any of my determinations.  Anything that you have

5 preserved for the record or anything that the appellate

6 court deems to be clear or plain error, you can appeal on

7 those grounds also.

8         And so, Mr. Leibowitz, those are the

9 constitutional rights that you have as an accused person.

10 So let me ask you a couple of questions.  Do you

11 understand these rights that you have as an accused

12 person?

13 A.      Yes, Your Honor.

14 Q.      And having understood them, then do you waive

15 them?  Meaning, do you give them up and ask that I accept

16 your guilty plea?  Is that your desire?

17 A.      Yes.

18 Q.      All right.  I want you to listen as the assistant

19 United States attorney relates the facts upon which this

20 plea is based.

21         MR. DUNNE:  Thank you very much, Your Honor.  The

22 parties hereby stipulate and agree that had the matter

23 gone to trial, the government would have proven the

24 following facts through competent evidence beyond a

25 reasonable doubt and that the following facts do not

1 encompass all of the evidence that would have been

2 presented had this matter gone to trial.

3         At all times relevant to this case, the defendant,

4 Shamai Leibowitz, was a resident of Maryland.

5         From January 2009 through August 2009, Leibowitz

6 was employed by the Federal Bureau of Investigation, the

7 FBI, as a contract linguist in an office located in

8 Calverton, Maryland.

9         As part of his official duties, Leibowitz held a

10 "Top Secret" security clearance and lawfully had access

11 to and possession of classified documents and information

12 concerning the communication intelligence activities of

13 the United States.

14         Leibowitz was not an authorized courier of

15 classified information and was not authorized to remove

16 classified information from his workplace.

17         In April 2009 Leibowitz knowingly and willfully

18 caused five documents which were classified at the

19 "Secret" level and contained classified information

20 concerning the communication intelligence activities of

21 the United States to be communicated, furnished,

22 transmitted, and made available to a person not entitled

23 to receive classified information, referred to here as

24 "Recipient A."

25         Recipient A was the host of a public Web log, or

1 "blog," available to anyone with access to the internet.

2 As Leibowitz well knew, Recipient A was not authorized to

3 receive the classified documents and information that

4 Leibowitz provided to Recipient A.  Recipient A then

5 published on the blog information derived from the

6 classified documents provided to  Recipient A by

7 Leibowitz.  As a result of these disclosures,

8 intelligence sources and methods related to these

9 documents were compromised.

10        On or about August 12, 2009, Leibowitz possessed

11 at his residence in Silver Spring, Maryland four

12 classified documents marked "Secret."  Leibowitz had

13 removed these documents from their proper place of

14 storage at his FBI office.  As Leibowitz well knew, he

15 was not authorized to store or retain classified

16 materials at his residence.

17        Thank you, Your Honor.

18        BY THE COURT:

19 Q.     All right.  Mr. Leibowitz, did you hear the

20 assistant United States attorney, Mr. Dunne, read the

21 stipulated facts?

22 A.     Yes.

23 Q.     Do you agree with those facts?

24 A.     Yes.

25 Q.     Do you have any questions of me before I decide

1 whether I should accept your guilty plea?

2 A.      No.

3          THE COURT:  Mr. Feldman, do you have any other

4 issues you want to put on the record?

5          MR. FELDMAN:  No, Your Honor.

6          THE COURT:  All right.  Mr. Dunne, anything else?

7          MR. DUNNE:  Nothing from the government, Your

8 Honor.

9          THE COURT:  All right.  Mr. Leibowitz, I'm

10 satisfied that you have made a knowing and voluntary

11 decision to plead guilty after I advised you of your

12 constitutional rights, which you have waived.  I further

13 find that there is an adequate factual bases to support

14 this guilty plea, and I will accept it.

15          All right.  Do we have anyone from Pretrial

16 Services here?

17          MS. MCGINNIS:  Yes, Your Honor.

18          THE COURT:  All right.  This is an initial

19 appearance.  Do you have any conditions or anything that

20 you're recommending?

21          MS. MCGINNIS:  The conditions of release that we

22 are recommending --

23          THE COURT:  Can you come to the mic there at the

24 podium?  I don't mean to call on you; this is how I

25 generally do it.  Yes.  State your name for the record.

1          MS. MCGINNIS:  Officer Melissa McGinnis, Pretrial

2 Services.

3          THE COURT:  Yes.

4          MS. MCGINNIS:  We are recommending pretrial

5 supervision and to surrender any passports to the clerk.

6 As I understand it, the FBI is in custody of both of his

7 passports.  Obtain no new passports or travel documents.

8 Travel is restricted to the D. C. - Metro area and the

9 district of New York for work purposes or as approved by

10 Pretrial.  And reside at his  address at 1131 University

11 Boulevard, and do not move without prior approval from

12 Pretrial.

13          THE COURT:  All right.  Thank you.

14          Mr. Dunne, do we have those passports in custody

15 here?

16          MR. DUNNE:  The FBI does have those passports,

17 Your Honor.  I was going to ask just for a couple of

18 minor changes to the conditions.  One is that the

19 defendant surrender any passports to the FBI, because

20 they do --

21          THE COURT:  Any additional ones?

22          MR. DUNNE:  No.  He has already surrendered --

23 back in August, he surrendered to the FBI both his

24 Israeli passport and his United States passport.  So I

25 would ask, as a condition of his release, that he

1 surrender any passports to the Federal Bureau of

2 Investigation and that they be allowed to hold on to

3 them, rather than the Clerk of the Court.

4          THE COURT:  All right.  Mr. Feldman, any problem

5 with that?

6          MR. FELDMAN:  No.  I gather what Mr. Dunne is

7 talking about is it should be, you know, complied with

8 fact and that the FBI can continue to retain custody, and

9 that would be fine, because they've already got them so

10 he can't surrender them to the court.

11          MR. DUNNE:  That's correct, Your Honor.

12          THE COURT:  All right.  What else?

13          MR. DUNNE:  Just a couple of other thing.  I did

14 want to inform the court, where it talks about the

15 defendant's history it refers to them as a subcontracted

16 attorney with the FBI.  And I think, as the court is now

17 aware, he was a subcontract linguist.  He was not an

18 attorney with the FBI, he was a linguist with the FBI.

19          THE COURT:  All right.

20          MR. DUNNE:  And it says here that he relinquished

21 his Israeli citizenship in January 2009 in order to join

22 the FBI, and I think that's not quite right.  I believe

23 he is still a dual citizen of both the United States and

24 of Israel.  I am not aware that he has renounced his

25 Israeli citizenship.  He did agree to surrender his

1 Israeli passport when he joined the FBI.  That's my

2 understanding.

3        The one other change to the recommendations I

4 would ask the court to impose is that the government

5 feels that his travel should be restricted to the D. C.

6 -- Washington, D. C. - Metropolitan area, and that any

7 travel outside this area should require prior approval by

8 Pretrial Services.  Right now the recommendation of

9 Pretrial Services allows him to travel to New York on his

10 own as he sees fit for work purposes, and we would ask

11 that that be changed so that he needs to seek prior

12 approval before leaving the Washington, D. C. -

13 Metropolitan area.  Prior approval from Pretrial

14 Services.

15        THE COURT:  All right.  Mr. Feldman, there's an

16 adjustment there on the travel restriction.  Do you have

17 a problem with that?

18        MR. FELDMAN:  No, Your Honor.  That was actually

19 -- I thought I read it that way the first time I looked

20 at it.  Mr. Leibowitz is doing some project work.  And

21 because he's a member of the New York bar, he has in the

22 past had to go up there.  So that's why I'm sure it was

23 inserted.  But as long as we understand that he can get

24 the permission barring anything unforeseen, then that

25 would be fine.

1        THE COURT:  To leave the metropolitan area, he has

2  to get an approval from Pretrial Services.

3        MR. FELDMAN:  The only other thing Your Honor is

4  --

5        THE COURT:  Did you pick -- Madam Clerk, did you

6  pick that up?

7        THE CLERK:  Yes, sir.

8        THE COURT:  All right.

9        MR. FELDMAN:  The only other thing is the question

10  of relinquishing his citizenship.  What Mr. Leibowitz

11  recalled and shared with the Pretrial Services officer

12  was just that he had to fill out a lot of paperwork when

13  he started his position with the FBI, and it was his

14  understanding that he was -- he indicated that he would

15  be willing to do so.  There was probably some, you know,

16  misunderstanding about the -- what the exact words are.

17  It's not crucial, but I just want to let the court know

18  he wasn't trying to mislead anybody.

19        THE COURT:  No, there has been no suggestion.

20  We'll just ask Ms. McGinnis to make a few adjustments,

21  amendments in the history parts.  Apparently he is still

22  a citizen of Israel, and also just get the correct title

23  of who he is and what he does.

24        All right.  And Madam Clerk, if you can make that

25  other adjustment there on that bullet No. 4 on the travel

1 restriction, we'll go ahead and adopt the recommendation

2 of Ms. McGinnis and release him under those conditions.

3         We'll set a sentencing date, Madam Clerk, for

4 when?  Order a presentence report, Mr. Lambert.  And set

5 sentencing -- how is March 3rd?

6         MR. DUNNE:  That's fine with the government, Your

7 Honor.

8         MR. FELDMAN:  Let me just double check, Your

9 Honor.

10         THE COURT:  All right.  Mr. Feldman?

11         MR. FELDMAN:  That's a good day for the defense.

12         THE COURT:  All right.  March 3rd.  It will be

13 9:30 before me.  All right.  Anything else, Madam Clerk,

14 you need?

15         THE CLERK:  No, sir.  I just need signatures in a

16 minute.

17         THE COURT:  All right.  You prepare the release

18 condition; I'll sign it when you get it ready.  Is that

19 it?  Underneath my signature, print it.

20         THE CLERK:  Yes, sir.

21         THE COURT:  All right.  I've signed the order

22 setting conditions of release.  All right.  This

23 concludes this matter.  Thank you.

24                 (Off the record at 11:54 a.m.)

25

## CERTIFICATE

I, Tracy Rae Dunlap, RPR, CRR, an Official Court Reporter for the United States District Court of Maryland, do hereby certify that I reported, by machine shorthand, the proceedings had in the case of UNITED STATES OF AMERICA versus SHAMAI KEDEM LEIBOWITZ, Criminal Action Number AW-09-0632 on December 17, 2009.

In witness whereof, I have hereto subscribed my name, this 29th day of December 2009.


_____/S/_____
TRACY RAE DUNLAP, RPR, CRR
OFFICIAL COURT REPORTER