```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND
                         SOUTHERN DIVISION



UNITED STATES OF AMERICA       .   Criminal Case No. AW-09-0632
                               .
    v.                         .
                               .   Greenbelt, Maryland
SHAMAI KEDEM LEIBOWITZ,        .
                               .
            Defendant.         .   Monday, May 24, 2010
. . . . . . . . . . . . . . .      3:10 p.m.




                     TRANSCRIPT OF SENTENCING
           BEFORE THE HONORABLE ALEXANDER WILLIAMS, JR.
                   UNITED STATES DISTRICT JUDGE




APPEARANCES:

FOR THE GOVERNMENT:         STEVEN M. DUNNE, ESQ.
                            Office of the United States Attorney
                            Suite 400, U.S. Courthouse
                            6500 Cherrywood Lane
                            Greenbelt, Maryland 20770

                            KATHLEEN KEDIAN, ESQ.
                            U.S. Department of Justice
                            1400 New York Avenue, N.W.
                            Washington, D.C. 20005

FOR THE DEFENDANT:          ROBERT C. BONSIB, ESQ.
                            Marcus and Bonsib
                            6411 Ivy Lane, Suite 116
                            Greenbelt, Maryland 20770



OFFICIAL COURT REPORTER:  GLORIA I. WILLIAMS   301-344-3228

          COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES
```

1                        P R O C E E D I N G S

2          THE COURT: Mr. Dunne, call the case.

3          MR. DUNNE: Thank you, Your Honor. Calling the case of United States of America v. Shamai Leibowitz. This is criminal number AW-09-0632. We're here for sentencing. I'm Steve Dunne and together with Katie Kedian we represent the United States, and with us today also is Chris Lenhart and Darrell Hunter and they're from the FBI. Thank you, Your Honor.

4          MR. BONSIB: Good afternoon, Your Honor. Robert Bonsib on behalf of Shamai Leibowitz, who is present and ready for sentencing.

5          THE COURT: All right. Are there any issues under the presentence report that I need to know about, any objections, corrections or anything?

6          MR. DUNNE: Your Honor, I have one correction, if I can find it. In paragraph 53 it refers to Mr. Leibowitz as a contractual attorney for the FBI and, in fact, he was a contract linguist, not an attorney when he was working for the FBI.

7          THE COURT: Okay.

8          MR. DUNNE: Apart from that, I don't have any other corrections.

9          THE COURT: All right. Mr. Lambert, can you make that correction?

10         MR. LAMBERT: Yes, sir.

11         THE COURT: All right. Thank you. All right,

1 Mr. Bonsib.

2 MR. BONSIB: We have no additions or corrections.

3 THE COURT: All right. Now, the court will hear from
4 you, Mr. Bonsib. Now, this is an 11(c). This is an 11(c) plea
5 and I think you all pretty much worked out the disposition. I
6 told you at the taking of the plea that I was in agreement with
7 that and would not deviate from that and I'm not prepared to
8 deviate from that.

9 MR. BONSIB: Thank you, Your Honor. I've also advised
10 Mr. Leibowitz in terms of when we set this for today, and I hope
11 I'm characterizing it correctly, that the court after
12 conversation with the government also indicated it would grant
13 voluntary surrender in this case.

14 THE COURT: Yes.

15 MR. BONSIB: So, those are the -- the only thing that
16 we are asking the court to consider, and the court may have
17 gleaned this from the letter submitted by Mr. Leibowitz and his
18 wife and his brother, is the question of whether the court would
19 grant an extended period for voluntary surrender until his wife
20 has completed sitting for the New York Bar. I've discussed it
21 with Mr. Dunne and he indicates that the government is simply
22 going to defer to the court with respect to that request. So
23 they're not going to consent to it. They're not going to oppose
24 it. And the reasons, I think, were set forth at some length in
25 the letters. Mr. Leibowitz knows he is going to be away for a

1  period of time.  He has six-year old twin children.  They need
2  to try to get his wife in a position where she can assist in
3  becoming the sole breadwinner for a period of time and allowing
4  him to be at home to take care of the children while she begins
5  the bar review course, which begins either I think today or very
6  shortly and will continue, as the court well knows, through a
7  period of time to shortly before the bar, which is at the end of
8  July.  It would be very difficult for her to attend to that task
9  that we all know is very difficult as one goes down the road to
10 trying to become a lawyer if she also has child care
11 responsibilities with the children.  And so, we're asking the
12 court to defer until I guess it would be the beginning of August
13 the surrender date in this particular case.
14         THE COURT:  Well, normally, Mr. Bonsib, as you know, I
15 don't do more than 60 days.  Now, we can juggle that slightly,
16 but unless there's some extraordinary emergency or something
17 like that, 60 days is the most that I go, but we can talk about
18 that.
19         MR. BONSIB:  I guess we're almost talking -- I forget
20 what the exact date of the bar exam is.
21         THE DEFENDANT:  27th and 28th of July.
22         MR. BONSIB:  27th and 28th.  So we're basically asking
23 the court for 65 days.
24         THE COURT:  All right.  Okay.  All right.
25         MR. BONSIB:  So, we'd ask the court to order

1  surrender -- and I'm saying August 1st just because that's a
2  couple of days beyond but at least through the conclusion of the
3  time.
4          THE DEFENDANT:  It's a Saturday.  So can we do it
5  Monday, August --
6          THE COURT:  We'll work that out.
7          MR. BONSIB:  Okay.  Thank you very much, Your Honor.
8  And if the court wishes to hear from his wife about anything
9  more on that particular issue, I'd have her address the court.
10         THE COURT:  No.  I'm familiar with the bar exam.  I
11 know it's around July --
12         MR. BONSIB:  Your Honor, I think with that, all of the
13 other issues are resolved.  I would like to acknowledge for the
14 court that Mr. Leibowitz is supported in court by his wife, by
15 Rabbi Landman, by his sister Tirza, by a good friend Mark Olkon.
16 In addition, the court has received a series of letters from
17 family and friends in support of Mr. Leibowitz.  But since this
18 matter is pretty well agreed to in terms of the central aspect
19 of it, I don't know that there's anything further for me to say
20 at this time, Your Honor.
21         THE COURT:  All right.  Mr. Dunne, do you have anything
22 to say for the government?
23         MR. DUNNE:  Just a few comments, Your Honor.  We have
24 agreed that the defendant should be allowed to self-surrender to
25 the Bureau of Prisons as Mr. Bonsib indicated.  I believe that

1  we also have a status memo from Pretrial Services recommending
2  self-surrender as well and we do defer to the court as to the
3  timing of the self-surrender.
4        I just wanted to say that this is a case with a very
5  serious offense.  The government felt that a significant period
6  of incarceration was proper and appropriate in this case.  We
7  reached an agreement with the defendant and his counsel in this
8  case.
9        Mr. Leibowitz worked for the FBI and betrayed the FBI
10 when he worked there and we have a lot of representatives here
11 from the FBI today who I know were very concerned about this
12 case from its very inception and I just wanted the court to be
13 aware of that.
14       THE COURT:  Well, essentially, Mr. Dunne, the court is
15 in the dark as to the kind documents, and I'm not asking you to
16 reveal it but, again, I accepted the plea because you all worked
17 it out.  But other than seeing the FBI agents here, I don't know
18 essentially what's been compromised, and I'm not asking that you
19 reveal that here.  But all I know is that it's a serious case.
20 It had to be serious in the sense that you have requested incar-
21 ceration, and that's fine.  But I just want all the parties here
22 to know that I'm not part and parcel of the intricacies of that.
23 I don't know.  I don't have any intimate connection or link.
24       MR. DUNNE:  I understand, Your Honor.
25       THE COURT:  So I don't know what was divulged other

1  than some documents, and how it compromised things, I have no
2  idea.
3          MR. DUNNE:  I understand that, Your Honor.  I just
4  wanted to bring that to the court's attention just as Mr. Bonsib
5  brought to the court's attention that family members are here in
6  support of Mr. Leibowitz.
7          THE COURT:  All right.
8          MR. DUNNE:  The government does ask for the 20 months
9  imprisonment.  We do ask for the maximum term of supervised
10 release, which would be three years.  Given the defendant's
11 financial status as reflected in the PSR, we are not asking for
12 a fine in this case, and there is a hundred dollar special
13 assessment.  Thank you, Your Honor.
14         THE COURT:  All right.  Mr. Bonsib, does Mr. Leibowitz
15 wish to make a statement?
16         MR. BONSIB:  Yes, sir.
17         THE COURT:  All right.  I'll hear from him.
18         THE DEFENDANT:  Your Honor, thank you first for
19 rescheduling the sentencing so that I didn't have to come on my
20 holiday.  I appreciate that.
21         THE COURT:  No problem.  Mr. Bonsib prevailed upon me.
22 Not a problem.
23         THE DEFENDANT:  And I thank you for that.  I refer you
24 to my personal letter in which I elaborated at length how sorry
25 I am for my conduct in this case, and my letter was written to

1  you from my heart and I hope it enters your heart.

2         I suffered many consequences as a result of my conduct
3  in this case.  Even before the first day I will step into
4  prison, I've already suffered so much on so many levels.  My
5  marriage has taken a toll, a very stressful situation for my
6  marriage.  My kids have suffered a lot.  Our financial situation
7  has been terrible.  We became destitute because of this case,
8  and my ability to earn and provide for the family has been
9  severely affected.  My professional career also has been
10 terribly affected by this.

11        And so, on so many levels I regret what has happened
12 and have already suffered consequences, not to mention the shame
13 that I brought to my family, my community, and all the people
14 that have supported me.

15        This was a one-time mistake that happened to me when I
16 worked at the FBI and saw things which I considered were viola-
17 tion of the law and I should not have told a reporter about it.
18 There's a way to act about this.  You should go to the Inspector
19 General at the Department of Justice.  There's even a law about
20 that and it's called the Intelligence Community Whistleblower
21 Protection Act of 1998, which I only later knew about, but
22 that's no excuse.  I should not have done what I did and I
23 regret it terribly.  I am aware of the responsibility when given
24 classified information to hold it classified and, as I think the
25 World War II maxim says, loose lips sink ships.  And so, rest

1    assured, Judge, that this will never happen to me again.

2           I also want to say that I've been in the military, so I
3    can take this prison sentence.  The people who will suffer are
4    my children.  So, I can withstand it, but that breaks my heart.
5    I've talked to them about this and when they hear about the
6    length, they cry and they beg me, "Can't you come home earlier?"
7    I don't know what to say to them.  At the formative time of
8    their life when they're six years old and they're just finishing
9    first grade, I'll be absent from their life, and that is the
10   most terrible thing about this case, and for such a long time.
11   If there's anything you can do about it, Judge, then certainly
12   that would go a long way and I would appreciate it.

13          One last thing is what my lawyer mentioned.  I will not
14   be able to provide for my family obviously and we will not be
15   able to survive on my current salary of my wife.  She's a
16   teacher and that's why she decided to sign up and take the New
17   York Bar.  It's so important for us that she'll be able to earn
18   a living to provide for the family.  I took the bar.  So I know
19   you cannot succeed on this bar if you don't devote the last
20   month to full-time study.  When I took the bar, she relieved me
21   from all my family duties.  I was studying 16 hours a day and
22   finally I passed.  I don't know if you can remember back in the
23   days when you took the bar, Judge, but it's a serious
24   endeavor -- I'm sure you do -- and it's a grueling endeavor and
25   she would need me to be at home until the very day that she --

1   two days -- actually, two days up in Albany, New York, when she
2   takes the bar.  So, I really ask you, Judge, to accept my plea
3   and my wife's plea to have the surrender date the week following
4   the bar, which is August 3rd, Monday, August 3rd.  Thank you
5   very much, Your Honor.
6           MR. BONSIB:  Your Honor, one final thing.  We would ask
7   the court to recommend Cumberland as the place of designation.
8           THE COURT:  Okay.  All right.  Thank you.  You may be
9   seated.
10          All right.  As the court stated earlier, this was what
11  we call an 11(c) plea and the court was not apprised of a lot of
12  the intimate issues associated with this.  We certainly
13  recognize it was a very, very serious offense, and it had to be
14  because the FBI charged him and he's looking at or was looking
15  at 46 to 57 months.  Now, that's a significant amount of time.
16  And so, it suggests to me that the disclosures that were
17  involved were serious material, classified material, and it did,
18  in fact, compromise the government and the FBI.  Apparently it
19  was given to a blogger and you know what happens when they
20  receive information.  It's pretty sad.
21          But, again, as Mr. Leibowitz has said, he has paid a
22  pretty tough price for -- he calls it, of course, poor judgment,
23  but it actually was a breach of the law.  You can't do that when
24  you're in sensitive positions like that and working for the FBI.
25  There's a certain amount of integrity and trust that's required

1  and you breached it.

2  What I'm going to do, of course, I'm obligated to
3  accept the agreement that the two of you worked out.  I don't
4  have any problem in doing that, but certainly I need to
5  articulate for the record the 3553 factors that support the
6  deviation from the guideline sentence of 46 months, and I think
7  we'll start off by saying the nature of the offense was a very
8  serious one.  There's no question about it.  It has shown a
9  disrespect for the law and that's a consideration that we have
10 to look at.  But other than the breaches to the government and
11 whatever compromise it is, there's no personal threats to
12 citizens that we see normally in a lot of these cases.

13 We have to factor in deterrence.  We have to send the
14 message out here that when people breach the law in the fashion
15 that it's been done, Mr. Leibowitz, that there's a penalty that
16 you and others have to pay.  So I have to look at deterrence as
17 a consideration there as well as breach of the law.

18 Disparity of sentencing is another factor that we have
19 to look at.  We don't get a lot of these cases.  So I don't have
20 a measuring stick to determine whether I'm very consistent when
21 I hand out these sentences.  But I'm reasonably satisfied here
22 that the amount of time that the government has agreed to and
23 that you and your attorney have agreed upon are satisfied or
24 would be satisfied under the guidelines and under the 3553
25 factors.  I think 20 months is a sufficient amount based on what

1  I think that you have done.

2       I'm not going to say any more.  I'm not going to
3  lecture you.  You know what you did and I hope that it is the
4  only breach that you will ever do and we'll never see you back
5  here again.  I suspect that your family has and will take a toll
6  in this.  There's no question about it.

7       I normally give no more than 60 days to report if we
8  give someone self-surrender, but we'll go ahead and -- I was
9  going to say the 30th, that Friday, but Monday is fine.  I'll
10 just go ahead and allow you to self-surrender on or before,
11 madam clerk, and that would be August 2nd of this year at the
12 particular institution that you are to report to.  We would
13 recommend that Cumberland be the institution that he would
14 report to, which takes into consideration his family setting.

15      Now, following that 20-month sentence he will then be
16 placed on supervised release.  We'll give him three years.
17 There's no indication that he's on drugs.  So I will suspend the
18 drug testing.

19      The government is not requesting a fine?

20      MR. DUNNE:  We are not, Your Honor, given his present
21 financial situation.

22      THE COURT:  All right.  Then we'll go ahead and waive
23 the fine.  No fine.  And the special assessment is $100.

24      I think he's waived his rights to appeal, but to the
25 extent he thinks he has something to appeal, he has 10 days from

1   today to note his appeal to the United States Court of Appeals

2   for the Fourth Judicial Circuit.

3            I will say, Mr. Leibowitz, that I did read all of the

4   letters from family and friends and the rabbi and also from my

5   friend, Senator Raskin, and others.  And I think that other than

6   this, you appear to be a straightforward and law-abiding

7   citizen.  It's very unfortunate that you breached the law here,

8   but I'm sure that you've learned from this experience and there

9   won't be any more.  That's all the comments I'll say here today.

10           Madam clerk, did I give you everything you need?

11           THE DEPUTY CLERK:  Yes, sir.

12           THE COURT:  Anything else, Mr. Bonsib?

13           MR. BONSIB:  No, Your Honor.  Thank you very much.

14           THE COURT:  Mr. Dunne, anything else?

15           MR. DUNNE:  Nothing else.  Thank you, Your Honor.

16           THE COURT:  All right.  This concludes this sentencing.

17           (Proceedings adjourned at 3:25 p.m.)

18                        CERTIFICATE OF REPORTER

19           I hereby certify that the foregoing is a true and

20  accurate transcript of proceedings in the above-entitled matter,

21  to the best of my knowledge and ability.

22

23

24                              _____/s/_____
                                Gloria I. Williams
25                              Official Court Reporter